FILED

2010 MAY 20  A 11: 44

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NO. DISTRICT OF CALIFORNIA

1  Ruffin B. Cordell (*Pro Hac Vice* Admission forthcoming / cordell@fr.com)
2  Ahmed J. Davis (*Pro Hac Vice* Admission forthcoming / davis@fr.com)
   Cherylyn Esoy Mizzo (*Pro Hac Vice* Admission forthcoming / mizzo@fr.com)
3  FISH & RICHARDSON P.C.
   1425 K Street NW, 11th Floor
4  Washington, DC 20008
   Telephone: 202-783-5070
5  Facsimile: 202-783-2331

6  Keeley I. Vega (CA SBN 259928)
7  kvega@fr.com
   FISH & RICHARDSON P.C.
8  500 Arguello Street, Suite 500
   Redwood City, CA 94063
9  Telephone: 650-839-5070
   Facsimile: 650-839-5071

E-filing

10

11  Attorneys for Plaintiffs
    HEWLETT-PACKARD COMPANY and
12  HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P.

13                 UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15                 SAN FRANCISCO DIVISION

16  HEWLETT-PACKARD COMPANY, a            Case No. CV 10  2175
17  Delaware Corporation, and
    HEWLETT-PACKARD DEVELOPMENT
18  COMPANY, L.P., a Texas Limited Partnership,    **COMPLAINT FOR: (1-6) PATENT**
                                                   **INFRINGEMENT IN VIOLATION OF 35**
19                                                 **U.S.C. § 271 *et seq.*; (7) VIOLATION OF**
                                                   **SECTION 43(a) OF THE LANHAM ACT,**
20              Plaintiffs,                         **15 U.S.C. § 1125(a); (8) UNFAIR**
                                                   **COMPETITION IN VIOLATION OF**
21          v.                                     **CALIFORNIA BUSINESS AND**
                                                   **PROFESSIONS CODE § 17200 *et seq.*; and**
22  MICROJET TECHNOLOGY CO. LTD., a               **(9) CONVERSION**
    Taiwanese Corporation, ASIA PACIFIC
23  MICROSYSTEMS, INC., a Taiwanese               **DEMAND FOR JURY TRIAL**
    Corporation,  MIPO TECHNOLOGY LIMITED,
24  a Hong Kong Corporation, MIPO SCIENCE &
    TECHNOLOGY CO., LTD., GUANGZHOU, a
25  Chinese Corporation, MEXTEC GROUP INC.
    d/b/a MIPO AMERICA LTD., a Florida
26  Corporation, SINOTIME TECHNOLOGIES,
    INC. d/b/a ALL COLORS, a Florida
27

28

Corporation, and PTC HOLDINGS LIMITED, a
Hong Kong Corporation,

Defendants.

## **COMPLAINT**

Plaintiffs Hewlett-Packard Company ("HP") and Hewlett-Packard Development Company,
L.P. ("HPDC"), by and through the undersigned attorneys, for their Complaint against MicroJet
Technology Co., Ltd. ("MicroJet"), Asia Pacific Microsystems, Inc. ("APM"), Mipo Technology
Limited ("Mipo Tech"), Mipo Science & Technology Co., Ltd., Guangzhou ("Mipo Science")
(Mipo Tech and Mipo Science collectively referred to as "Mipo"), Mextec Group Inc. d/b/a Mipo
America Ltd. ("Mipo America"), SinoTime Technologies, Inc. d/b/a All Colors ("SinoTime"), and
PTC Holdings Limited ("PTC") (collectively "Defendants"), plead and allege as follows:

### I.   **INTRODUCTION**

1.     HP and HPDC bring this action to redress certain unlawful activities Defendants
have committed that relate to aftermarket thermal inkjet ink cartridges that are used on commercial
products, such as personal computer printers, and have been imported and sold in the United States.
While the causes of action asserted in this Complaint may be construed to arise from two separate,
yet overlapping set of facts, all causes of actions relate to Defendants' ultimate scheme to
unlawfully misappropriate HP's and HPDC's talent, resources, and workmanship in an effort to
market and sell low-quality, knockoff aftermarket ink cartridges (hereinafter also referred to as
"clones") to the general public.[1]

---

[1]   The infringing ink cartridges at issue in this action include cartridges that are marketed as
compatible with at least the HP 27/28 and HP 56/57 ink cartridges.  In addition to those
products, HP manufactures and sells additional models that share the same or similar structure
but differ in other attributes, such as ink volume, ink color, and compatibility with certain
printing platforms.  Those models include HP 21/22, HP 54, and HP 58/59 cartridges.

2

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF
THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS
CODE § 17200 et seq.; and (9) CONVERSION

2.      The first set of facts relate to the patent infringement claims set forth in Counts I to VI below.  On information and belief, Defendants make, use, sell, offer for sale within the United States, or import into the United States, products that infringe one or more of the claims of the patents in suit.  The accused products that infringe the asserted claims include, but are not limited to the following products:  1) Mipo's HP 57-compatible color ink cartridge (product code MP 57 – C6657A) and HP 28-compatible color ink cartridge (product code MP 28 – C8728A); and 2) PTC's HP 21-compatible black ink cartridge (product codes HC 21; HC 21XL – C9351) and HP 22-compatible color ink cartridges (product codes HC 22XL – C9352).  Defendants' actions constitute patent infringement in violation of 35 U.S.C. § 271 *et seq.*

3.      The second set of facts that give rise to the remaining causes of action set forth in Counts VII to IX relate to a separate set of accused products, namely, products that are marketed as "Mipo" HP 27-compatible black ink cartridge (product code MP 27 (C8727A)) and HP 56-compatible black ink cartridge (product code MP 58 – C6657A).  Those cartridges, as is the case with all of the accused products, are comprised of two main external components, i.e., an ink cartridge body and a tab head assembly ("THA"), both of which are necessary for the ink cartridge to work. The THA, which is mounted on an ink cartridge body, is made up of two main components: 1) an electrical flex and 2) the more complex and valuable component of the cartridge known as the printhead.[2]  On information and belief, at least in March and September 2007, Defendants and/or other unidentified parties converted over 300,000 genuine HP printheads from HP facilities in Asia, incorporated those printheads in "Mipo" products labeled HP 27 and HP 56-

---

Throughout the Complaint, the aforementioned HP models will be collectively referred to as the "HP 56/57 Family" of products.
[2] For ease of reference, the terms "printhead" and "THA" will be used interchangeably throughout the Complaint.

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

1  compatible aftermarket ink cartridges, and sold those ink cartridges containing HP printheads in

2  various countries around the world, including the United States, as "Mipo" products.

3         4.      To redress the harm HP and HPDC have and continue to suffer as a result of

4  Defendants' unlawful actions, HP and HPDC bring the following claims in this action:

5             a)  Patent infringement in violation of 35 U.S.C. § 271 *et seq.*;

6  

7             b)  Reverse passing off in violation of Section 43(a) of the Lanham Act;

8             c)  Unfair competition in violation of California Business and Professions Code

9                § 17200 *et seq.*; and

10            d)  Conversion.

11         **II.**     **JURISDICTION AND VENUE**

12        5.      Subject matter jurisdiction over the asserted causes of actions before this Court is

13 
14 proper and founded upon 28 U.S.C. §§ 1331, 1338, and 1367.

15        6.      This Court has personal jurisdiction over Defendants because, among other

16 things, on information and belief, Defendants regularly do business in this judicial district and/or

17 infringed or caused infringement in California and in this judicial District.  Defendants MicroJet,

18 APM, Mipo Tech, Mipo Science and PTC are alien corporations.

19        7.      Venue is proper in this Court under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b)

20 because, on information and belief, acts of infringement have been committed in this judicial

21 District, injuries complained of herein occurred in this judicial District, and Defendants are subject

22 to personal jurisdiction in this judicial District.

23 

24        8.      This Complaint includes an Intellectual Property Action for Patent Infringement,

25 which is an excepted category under Civil Local Rule 3-2(c).  Consequently, this action is assigned

26 on a district-wide basis.

27 

28 
COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF
THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS
CODE § 17200 et seq.; and (9) CONVERSION

### III.   **THE PARTIES**

9.      Plaintiff Hewlett-Packard Company is a Delaware corporation having a principal place of business at 3000 Hanover Street, Palo Alto, California 94304.  Plaintiff Hewlett-Packard Development Company, L.P. is a wholly-owned subsidiary of Hewlett-Packard Company, and is a Texas limited partnership having a principal place at 20555 S.H. 249 Houston, Texas 77070.

10.      HP is a pioneer in inkjet printing technology, having introduced the world's first consumer inkjet printer in 1984.  Since then, HP has sold millions of inkjet supplies in the United States and throughout the world, continually improving the technology.  Founded as a partnership in 1939 by college friends, William R. Hewlett and David Packard, HP has grown to become a global technology leader with products ranging from personal computing, printing and imaging to IT infrastructure and digital entertainment.  Over the last seven decades, HP has earned a reputation as one of the most successful and trusted technology companies in the world, and has invested billions of dollars and millions of hours to develop cutting-edge technologies, processes and business strategies needed to achieve and maintain that reputation.  From its humble beginnings in a Palo Alto garage, HP has grown to employ 320,000 people who serve more than a billion customers in more than 170 countries across the globe.

11.      HP and HPDC are informed and believe, and on the basis of said information and belief allege, that Defendant MicroJet is a subsidiary of the publicly held entity, DBTel Inc., and is organized and existing under the laws of Taiwan with its principal place of business located at 1F, No. 28, R&D 2nd Rd., Science-Based Industrial Park, Hsinchu City, Taiwan 30076 and doing business in this judicial district.

12.      HP and HPDC are informed and believe, and on the basis of said information and belief allege, that Defendant APM is organized and existing under the laws of Taiwan, with its

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

principal place of business located at No. 2, R&D Rd 6, Science-Based Industrial Park, Hsinchu City, Taiwan R.O.C., and doing business in this judicial district.

13. HP and HPDC are informed and believe, and on the basis of said information and belief allege, that Defendant Mipo Tech is a private limited company organized and existing under the laws of the Hong Kong, having a principal place of business at Rm B 11/F Wong Tze Bldg, 71 Hoi Yuen Rd., Kwun Tong, Kowloon, Hong Kong and doing business in this judicial district.

14. HP and HPDC are informed and believe, and on the basis of said information and belief allege, that Defendant Mipo Science is a company organized and existing under the laws of China with its principal place of business located at Rm 3310-3313, XinYuan Building, No. 898 North Tianhe Road, Guangzhou, China and doing business in this judicial district.

15. HP and HPDC are informed and believe, and on the basis of said information and belief allege, that, as of the date of the filing of this Complaint, Defendant Mipo America is a corporation organized and existing under the laws of the State of Florida with its principal place of business located at 3100 N.W. 72nd Avenue #106, Miami, Florida 33122 and doing business in this judicial district. On information and belief, Mipo America also purports to maintain additional offices in Los Angeles, California and Charlotte, North Carolina.

16. HP and HPDC are informed and believe, and on the basis of said information and belief allege, that Defendant SinoTime is a corporation organized and existing under the laws of the State of Florida with its principal place of business located at 3100 N.W. 72nd Avenue #106, Miami, Florida 33122 and doing business in this judicial district.

17. HP and HPDC are informed and believe, and on the basis of said information and belief allege, that Defendant PTC is a corporation organized and existing under the laws of Hong Kong, having a principal place of business at Room B, 5/F, Mai Tak Industrial Building, 221 Wai Yip Street, Kwun Tong, Kowloon, Hong Kong and doing business in this judicial district.

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

## IV.    FACTUAL BACKGROUND

### A.    The Patented Technology

18.    The technology and products at issue generally relate to thermal inkjet printing devices, and more particularly to inkjet ink cartridges that include a component portion, known as a printhead. Typically, an inkjet printer uses a printhead mounted onto a carriage that moves relative to a printing surface. The printhead is often controlled by a control system, such as a microcomputer, that activates inkjets on the moving printhead at the appropriate locations, causing the printhead to eject ink drops onto the printing surface and to form desired images and characters.

19.    An inkjet printhead is often designed using a thin film substructure to provide the energy needed to fire drops of ink on the page. Typically, a printhead contains various layers, which are illustrated in the figure below. Those layers include: 1) an orifice plate 13, i.e., the outermost layer that contains an array of precisely formed nozzles 21; 2) an ink barrier layer 12; and 3) a thin film substructure 11. The nozzles 21 in the orifice plate 13 are aligned with associated ink chambers 19 located within ink channels 29 contained in the ink barrier layer 12. The ink chambers 19 are disposed over associated ink firing resistors 56 located in the thin film substructure 11. An ink drop generator 40 is typically comprised of an alignment of the three layers, namely, an ink firing resistor 56, an associated ink chamber 19, and the associated orifice nozzle 21.



FIG.3A

7

20.     An electric current that passes through a resistive element, such as a resistor, may be used to activate an ink drop generator. A switching device, such as a field effect transistor, may also be used to provide the electric current to individual resistors and/or drop generators. The patents relate to various aspects of the printhead design that result in an efficient and energy-balanced printhead, which in turn results in an overall improved inkjet ink cartridge.

21.     This lawsuit relates to the Defendants' infringement of six United States patents: United States Patent Nos. 6,234,598; 6,309,053; 6,398,347; 6,412,917; 6,481,817; and 6,402,279.

**B.     The Patents-In-Suit**

22.     HPDC is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,234,598 ("the '598 Patent"), entitled "Shared Multiple Terminal Ground Returns For an Inkjet Printhead." The '598 Patent was issued on May 22, 2001, from U.S. Patent Application No. 09/386,574, filed August 30, 1999. The '598 Patent is valid, enforceable, and currently is in full force and effect.

23.     HPDC is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,309,053 ("the '053 Patent"), entitled "Inkjet Printhead Having a Ground Bus That Overlaps Transistor Active Regions." The '053 Patent was issued on October 30, 2001, from U.S. Patent Application No. 09/621,922, filed July 24, 2000. The '053 Patent is valid, enforceable, and currently is in full force and effect.

24.     HPDC is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,398,347 ("the '347 Patent"), entitled "Energy Balanced Ink Jet Printhead." The '347 Patent was issued on June 4, 2002, from U.S. Patent Application No. 09/626,367, filed July 24, 2000. The '347 Patent is valid, enforceable, and currently is in full force and effect.

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

25.     HPDC is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,412,917 ("the '917 Patent"), entitled "Energy Balanced Printhead Design." The '917 Patent was issued on July 2, 2002, from U.S. Patent Application No. 10/773,180, filed January 30, 2001. The '917 Patent is valid, enforceable, and currently is in full force and effect.

26.     HPDC is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,481,817 ("the '817 Patent"), entitled "Method and Apparatus for Ejecting Ink." The '817 Patent was issued on November 19, 2002, from U.S. Patent Application No. 09/702,231, filed October 30, 2000. The '817 Patent is valid, enforceable, and currently is in full force and effect.

27.     HPDC is the owner by assignment of all right, title, and interest in and to United States Patent No. 6,402,279 ("the '279 Patent"), entitled "Inkjet Printhead and Method for the Same." The '279 Patent was issued on June 11, 2002, from U.S. Patent Application No. 09/702,141, filed October 30, 2000. The '279 Patent is valid, enforceable, and currently is in full force and effect.

C.     **Defendants Copy the Patented Technology Covered By the HP Patents and Sell Infringing Products In the Marketplace**

28.     On information and belief, MicroJet manufactures overseas, in whole or in part, infringing ink cartridges. On information and belief, Microjet not only sells the accused products under its own brand name, but also offers for sale and/or sells generic and/or made-to-order infringing ink cartridges to other companies, including Defendants Mipo and PTC. In particular, on information and belief, MicroJet offers various types of "build-to-order" services to other companies involved in the business of selling inkjet ink supplies. For example, those services include manufacturing cartridges according to buyer delivered specifications or making products that are built to a standard specification and labeling the product with the buyer's brand.

9

29.     On information and belief, APM manufactures, offers for sale and/or sells generic and/or made-to-order infringing components of ink cartridges to other companies, including at least Defendant MicroJet.  In particular, on information and belief, APM offers various types of "build-to-order" services, including but not limited to foundry services and other fabrication activities, to other companies, including at least MicroJet, that are involved in the business of selling inkjet ink supplies.[3]

30.     On information and belief, Mipo purchases or otherwise obtains infringing ink cartridges that are manufactured, at least in part, by MicroJet.  On information and belief, Mipo subsequently takes ownership of final packaging and marketing of those products as Mipo-branded ink cartridges.  On information and belief, Mipo, Mipo America, SinoTime and/or others import those infringing products into the United States for sale, sell those accused products for importation into the United States, and/or sell those accused products after they have been imported into the United States.

31.     On information and belief, various internet sites, such as www.amazon.com ("Amazon") and www.craigslist.com ("Craigslist"), have offered for sale in the United States Mipo's infringing products and sold them after importation into the United States.

32.     On information and belief, at least between April 2009 and June 2009, Defendant Mipo America advertised the Mipo infringing products for sale on Amazon.  During that time period, HP representatives made several purchases of the infringing products through the amazon.com website.  Mipo America shipped the infringing products, specifically Mipo's HP 57-compatible color ink cartridge (product code MP 57 – C6657A), to the various HP representatives at their respective California, Washington, Oregon, Texas, and District of Columbia addresses.

---

[3]    For ease of reference, throughout the Complaint, references to products supplied by MicroJet are meant to include printheads manufactured by APM.

10

33.    On information and belief, Mipo America offered for sale Mipo's infringing product on Craigslist. On or around August 14, 2009, an individual, on behalf of HP, responded to the advertisement for the infringing products and was later contacted by a representative of Mipo America. The individual placed an order for the infringing Mipo cartridges. On or around August 21, 2009, on information and belief, the individual received a shipment from Mipo America that contained, among other things, three of Mipo's infringing HP 57-compatible color ink cartridges. The shipment was received at the individual's New Jersey address.

34.    On information and belief, Defendant SinoTime operates an online store under the name "All Colors" on Amazon. SinoTime has advertised the infringing products for sale and sold them after importation into the United States. Although the advertisement appeared to offer "remanufactured" cartridges for sale, on information and belief, SinoTime actually offered for sale newly manufactured ink cartridges that were manufactured, in whole or in part, by MicroJet and marketed under Mipo's brand name. In January 2010, HP purchased the HP 27 and HP 28 combo-pack advertised by SinoTime on Amazon and subsequently received the combo pack that contained a Mipo-branded, MicroJet-sourced HP 28 compatible infringing ink cartridge (product code MP 28 – C8728A).

35.    The shipment from SinoTime originated from 3100 NW 72nd Ave Ste 106, Miami Florida, 33122-1336, the same business address as Mipo America. On information and belief, Defendants Mipo America and SinoTime act in concert to sell the infringing products in the United States.

36.    On information and belief, Mipo America and SinoTime continue to sell infringing products on the internet.

37.    On information and belief, MicroJet and/or APM manufacture, at least in part, PTC's accused products. Specifically, on information and belief, MicroJet and/or APM

11

1  manufacture the printhead component of the ink cartridges for PTC, which infringe the patents in

2  suit. On information and belief, PTC purchases or otherwise obtains the MicroJet and/or APM-

3  sourced infringing printheads, mounts them on PTC cartridge bodies, and subsequently markets

4  those products as PTC-branded ink cartridges. On information and belief, PTC and/or others import

5  those accused products into the United States for sale, sell those accused products for importation

6  into the United States, and/or sell those accused products after they have been imported into the

7

8  United States.

9      38.    On information and belief, PTC offers for sale in the United States infringing

10  products via its product catalog that it maintains on its website and in its e-brochure.

11      39.    PTC was also an exhibitor at the International Consumer Electronics Show

12  ("CES") held in Las Vegas, Nevada on January 7-10, 2010. At their booth, PTC displayed several

13

14  accused products that, on information and belief, infringe the asserted patents in suit, including, at

15  least, PTC's HP 21-compatible black ink cartridge (product codes HC 21; HC 21XL – C9351) and

16  HP 22-compatible color ink cartridges (product codes HC 22XL – C9352). Thus, PTC imported

17  infringing ink cartridges for sale within the United States, at least on or before January 7, 2010,

18  without authorization and thus in violation of the patent laws.

19      40.    PTC was also an exhibitor at the Paperworld Trade show that took place in

20  Frankfurt, Germany from January 29 to February 1, 2010. A PTC representative informed an HP

21

22  employee who was in attendance that they would ship their products to United States.

23      41.    The representative stated that PTC has the capability to produce high volumes of

24  cartridge bodies, namely 800,000 pieces per month. The representative further explained that with

25  regard to their products that contain a printhead, PTC manufactures the cartridge bodies, but not the

26  printheads. The representative stated that PTC uses printheads that are supplied by a Taiwanese

27

28

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF
THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS
CODE § 17200 et seq.; and (9) CONVERSION

manufacturer. On information and belief, the supplier of the infringing printheads is MicroJet and/or APM.

42. On information and belief, PTC and MicroJet and/or APM have an existing business relationship that exists, at least in part, to manufacture the infringing ink cartridges. On information and belief, PTC is a China-based production partner of MicroJet and/or APM.

43. Thus, on information and belief, MicroJet and/or APM has made, at least in part, the accused products that infringe one or more claims of the patents in suit. In addition, on information and belief, Mipo, Mipo America, and SinoTime have used, sold, offered for sale within the United States, and/ or imported into the United States, products that infringe one or more of the claims of the asserted patents, and continue to do so. On information and belief, PTC has made, used, sold, offered for sale within the United States, and/or imported into the United States, products that infringe one or more of the claims of the asserted patents, and continue to do so.

**D.** **Defendants Mipo, and/or MicroJet Converted Genuine HP Printheads, Incorporated the Converted Printheads Into Their Products, And Sold Them In the Marketplace**

44. HP manufactures the HP 56/57 Family of products abroad. In particular, HP manufactures certain components of the ink cartridge, including the printheads, in a manufacturing facility located in Singapore. Assembly of the component parts into the final product occurs in a contract manufacturer assembly plant located in Malaysia.

45. In 2006 and early March 2007, HP noticed and recorded that certain component parts appeared to have been unlawfully taken from the HP facilities. As a result, increased security measures were implemented to prevent loss from manufacturing and assembly sites. As part of that effort, HP tightened its transport measures, including using trucks and security personnel to transport the component parts, including the printheads, to the assembly plant in Malaysia.

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

46.     In March and September 2007, trucks carrying HP parts were hijacked while en route from the manufacturing facility in Singapore to the assembly plant in Malaysia.  On information and belief, those hijackings were in direct response to the heightened security measures that had been implemented in HP production facilities.  The trucks that were hijacked carried printheads for HP print cartridges, which were packaged into reels.  The products were in an unassembled state.

47.     HP employs an internal tracking system that allows each component part to be tracked back to a specific manufacturing date and location and can be associated with products co-manufactured and packaged into reels.  Each genuine HP printhead is marked with a unique product identifier called a flex identification ("FID").  The system enables HP to track the reels for inventory and shipment.  The FIDs and reels may be tracked all the way through the manufacturing process and HP is able to easily identify whether a certain printhead was assembled into a final ink cartridge.

48.     In March 2008, HP employees purchased one set of "Mipo" products (HP 56 and HP 57-compatible) cartridges from Mipo America via Amazon.

49.     Results from internal analysis of those "Mipo" products indicated that the HP 56 compatible cartridge was composed of a genuine HP printhead and a non-HP cartridge body that was made to resemble a genuine HP cartridge body.

50.     HP employees made additional purchases from Mipo America via Amazon, including three "Mipo" HP 56-compatible and two "Mipo" HP 27-compatible ink cartridges.  Upon receiving the products from Mipo America, HP determined that all of those products were likewise composed of a genuine HP printhead and a non-HP cartridge body that closely resembled a genuine HP cartridge body.

51.     In April 2009, HP made additional controlled purchases from Mipo America via Amazon.  The controlled purchase sample also was composed of a genuine HP printhead and a non-HP cartridge body that closely resembled a genuine HP cartridge body.

52.     Using its internal tracking database, HP cross-referenced the unique FID numbers from the converted printheads with those on the manufacturing database.

53.     Of the seven "Mipo" labeled products containing the converted printheads, it was determined that: 1) all of the genuine HP printheads came from manufacturing lots produced in February and March of 2006; 2) several of the printheads originated from the same reel; and 3) all of the printheads had large blocks of associated printheads that were never assembled into final cartridges (i.e., were identified as production gaps).  These observations indicate that the genuine HP printheads purchased from Mipo America via Amazon originated from reels that were converted from HP facilities on or corresponding to the manufacturing date.

54.     All of the products containing the converted printheads were packaged in a "Mipo" labeled box and were individually wrapped in a clear plastic interior packaging that is clearly consistent with the standard packaging for products manufactured by Defendant MicroJet.

55.     On information and belief, Defendants and/or other unidentified parties were either directly or indirectly involved in the events surrounding the converted printheads based on, *inter alia*, the manufacturing, packaging, distribution, marketing, and sale of the products containing HP converted printheads.

56.     Defendants acted with an unlawful purpose and deliberate intent as demonstrated, for example, by the fact that the cloned ink cartridge body was designed to look exactly like a genuine HP ink cartridge body in order to pass off the "Mipo" labeled product as a genuine, remanufactured HP ink cartridge.

## V.     CAUSES OF ACTION

15

# COUNT I

## Infringement of the '598 Patent Under 35 U.S.C. § 271 *et seq.*
## (Against all Defendants)

57.     HP and HPDC reallege and incorporate herein by reference the allegations in paragraphs 1-56 above.

58.     The accused products of Defendants MicroJet, APM, Mipo, Mipo America, SinoTime, and PTC infringe at least claims 1-10 of the '598 Patent.  On information and belief, Defendant APM supplies at least MicroJet with components that are specially made for use in MicroJet's accused products that infringe the '598 Patent.

59.     Defendants have infringed and are infringing the '598 Patent by their unauthorized making, using, selling, offering for sale within the United States, or importing into the United States, products that infringe one or more of the claims of the '598 Patent.

60.     Defendants are not licensed or otherwise authorized to make, use, import, sell, or offer to sell any ink cartridge or process/method claimed in the '598 Patent, and Defendants' conduct is, in every instance, without HPDC's consent.

61.     Defendants, including APM, are actively inducing or contributing to the infringement by others of the '598 Patent.

62.     As a result of the Defendants' past and continued unlawful infringement of the '598 Patent, HPDC has suffered and will continue to suffer damage.  HPDC is entitled to recover damages adequate to compensate for that infringement in an amount that cannot be presently quantified, but will be ascertained at trial.

63.     On information and belief, Defendants' acts of infringement have been made with full knowledge of HPDC's rights in the '598 Patent.  Such acts constitute willful and deliberate infringement, entitling HPDC to enhanced damages and reasonable attorney fees.

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

64.     Defendants' acts of infringement have caused and will continue to cause irreparable injury to HPDC unless and until enjoined by this Court.

65.     HPDC seeks a preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the claims of the '598 Patent.

66.     HPDC seeks an accounting for damages, an award of interest and costs against Defendants, as well as a finding of willful infringement sufficient to warrant an award of attorneys' fees.

## COUNT II

### Infringement of the '053 Patent Under 35 U.S.C. § 271 *et seq.*
### (Against all Defendants)

67.     HP and HPDC reallege and incorporate herein by reference the allegations in paragraphs 1-66 above.

68.     The accused products of Defendants MicroJet, APM, Mipo, Mipo America, SinoTime, and PTC infringe at least claims 1-6, and 8-17 of the '053 Patent.  On information and belief, Defendant APM supplies at least MicroJet with components that are specially made for use in MicroJet's accused products that infringe the '053 Patent.

69.     Defendants have infringed and are infringing the '053 Patent by their unauthorized making, using, selling, offering for sale within the United States, or importing into the United States, products that infringe one or more of the claims of the '053 Patent.

70.     Defendants are not licensed or otherwise authorized to make, use, import, sell, or offer to sell any ink cartridge or process/method claimed in the '053 Patent, and Defendants' conduct is, in every instance, without HPDC's consent.

71.   Defendants, including APM, are actively inducing or contributing to the infringement by others of the '053 Patent.

72.   As a result of the Defendants' past and continued unlawful infringement of the '053 Patent, HPDC has suffered and will continue to suffer damage.  HPDC is entitled to recover damages adequate to compensate for that infringement in an amount that cannot be presently quantified, but will be ascertained at trial.

73.   On information and belief, Defendants' acts of infringement have been made with full knowledge of HPDC's rights in the '053 Patent.  Such acts constitute willful and deliberate infringement, entitling HPDC to enhanced damages and reasonable attorney fees.

74.   Defendants' acts of infringement have caused and will continue to cause irreparable injury to HPDC unless and until enjoined by this Court.

75.   HPDC seeks a preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the claims of the '053 Patent.

76.   HPDC seeks an accounting for damages, an award of interest and costs against Defendants, as well as a finding of willful infringement sufficient to warrant an award of attorneys' fees.

## COUNT III

**Infringement of the '347 Patent Under 35 U.S.C. § 271 *et seq.*
(Against all Defendants)**

77.   HP and HPDC reallege and incorporate herein by reference the allegations in paragraphs 1-76 above.

78.   The accused products of Defendants MicroJet, APM, Mipo, Mipo America, SinoTime, and PTC infringe at least claims 1-6 and 8-12 of the '347 Patent.  On information and

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

belief, Defendant APM supplies at least MicroJet with components that are specially made for use in MicroJet's accused products that infringe the '347 Patent.

79.    Defendants have infringed and are infringing the '347 Patent by their unauthorized making, using, selling, offering for sale within the United States, or importing into the United States, products that infringe one or more of the claims of the '347 Patent.

80.    Defendants are not licensed or otherwise authorized to make, use, import, sell, or offer to sell any ink cartridge or process/method claimed in the '347 Patent, and Defendants' conduct is, in every instance, without HPDC's consent.

81.    Defendants, including APM, are actively inducing or contributing to the infringement by others of the '347 Patent.

82.    As a result of the Defendants' past and continued unlawful infringement of the '347 Patent, HPDC has suffered and will continue to suffer damage.  HPDC is entitled to recover damages adequate to compensate for that infringement in an amount that cannot be presently quantified, but will be ascertained at trial.

83.    On information and belief, Defendants' acts of infringement have been made with full knowledge of HPDC's rights in the '347 Patent.  Such acts constitute willful and deliberate infringement, entitling HPDC to enhanced damages and reasonable attorney fees.

84.    Defendants' acts of infringement have caused and will continue to cause irreparable injury to HPDC unless and until enjoined by this Court.

85.    HPDC seeks a preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the claims of the '347 Patent.

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

86.     HPDC seeks an accounting for damages, an award of interest and costs against Defendants, as well as a finding of willful infringement sufficient to warrant an award of attorneys' fees.

### COUNT IV

**Infringement of the '917 Patent Under 35 U.S.C. § 271 *et seq.***
**(Against all Defendants)**

87.     HP and HPDC reallege and incorporate herein by reference the allegations in paragraphs 1-86 above.

88.     The accused products of Defendants MicroJet, APM, Mipo, Mipo America, SinoTime, and PTC infringe at least claims 1-21 of the '917 Patent.  On information and belief, Defendant APM supplies at least MicroJet with components that are specially made for use in MicroJet's accused products that infringe the '917 Patent.

89.     Defendants have infringed and are infringing the '917 Patent by their unauthorized making, using, selling, offering for sale within the United States, or importing into the United States, products that infringe one or more of the claims of the '917 Patent.

90.     Defendants are not licensed or otherwise authorized to make, use, import, sell, or offer to sell any ink cartridge or process/method claimed in the '917 Patent, and Defendants' conduct is, in every instance, without HPDC's consent.

91.     Defendants, including APM, are actively inducing or contributing to the infringement by others of the '917 Patent.

92.     As a result of the Defendants' past and continued unlawful infringement of the '917 Patent, HPDC has suffered and will continue to suffer damage.  HPDC is entitled to recover

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

1   damages adequate to compensate for that infringement in an amount that cannot be presently

2   quantified, but will be ascertained at trial.

3         93.    On information and belief, Defendants' acts of infringement have been made

4   with full knowledge of HPDC's rights in the '917 Patent.  Such acts constitute willful and deliberate

5   infringement, entitling HPDC to enhanced damages and reasonable attorney fees.

6         94.    Defendants' acts of infringement have caused and will continue to cause

7   irreparable injury to HPDC unless and until enjoined by this Court.

8

9         95.    HPDC seeks a preliminary and permanent injunction restraining and enjoining

10  Defendants and their agents, servants, employees, and all persons acting thereunder, in concert with,

11  or on their behalf, from infringing the claims of the '917 Patent.

12        96.    HPDC seeks an accounting for damages, an award of interest and costs against

13  Defendants, as well as a finding of willful infringement sufficient to warrant an award of attorneys'

14  fees.

15

16  ## COUNT V

17  ### Infringement of the '817 Patent Under 35 U.S.C. § 271 *et seq.*
    ### (Against all Defendants)

18

19        97.    HP and HPDC reallege and incorporate herein by reference the allegations in

20  paragraphs 1-96 above.

21        98.    The accused products of Defendants MicroJet, APM, Mipo, Mipo America,

22  SinoTime, and PTC infringe at least claims 1-15 of the '817 Patent.  On information and belief,

23  Defendant APM supplies at least MicroJet with components that are specially made for use in

24  MicroJet's accused products that infringe the '817 Patent.

25

26

27

28
COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

99.     Defendants have infringed and are infringing the '817 Patent by their unauthorized making, using, selling, offering for sale within the United States, or importing into the United States, products that infringe one or more of the claims of the '817 Patent.

100.    Defendants are not licensed or otherwise authorized to make, use, import, sell, or offer to sell any ink cartridge or process/method claimed in the '817 Patent, and Defendants' conduct is, in every instance, without HPDC's consent.

101.    Defendants, including APM, are actively inducing or contributing to the infringement by others of the '817 Patent.

102.    As a result of the Defendants' past and continued unlawful infringement of the '817 Patent, HPDC has suffered and will continue to suffer damage. HPDC is entitled to recover damages adequate to compensate for that infringement in an amount that cannot be presently quantified, but will be ascertained at trial.

103.    On information and belief, Defendants' acts of infringement have been made with full knowledge of HPDC's rights in the '817 Patent. Such acts constitute willful and deliberate infringement, entitling HPDC to enhanced damages and reasonable attorney fees.

104.    Defendants' acts of infringement have caused and will continue to cause irreparable injury to HPDC unless and until enjoined by this Court.

105.    HPDC seeks a preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the claims of the '817 Patent.

106.    HPDC seeks an accounting for damages, an award of interest and costs against Defendants, as well as a finding of willful infringement sufficient to warrant an award of attorneys' fees.

## COUNT VI

**Infringement of the '279 Patent Under 35 U.S.C. § 271 *et seq.*
(Against all Defendants)**

107. HP and HPDC reallege and incorporate herein by reference the allegations in paragraphs 1-106 above.

108. The accused products of Defendants MicroJet, APM, Mipo, Mipo America, SinoTime, and PTC infringe at least claims 9-16 of the '279 Patent. On information and belief, Defendant APM supplies at least MicroJet with components that are specially made for use in MicroJet's accused products that infringe the '279 Patent.

109. Defendants have infringed and are infringing the '279 Patent by their unauthorized making, using, selling, offering for sale within the United States, or importing into the United States, products that infringe one or more of the claims of the '279 Patent.

110. Defendants are not licensed or otherwise authorized to make, use, import, sell, or offer to sell any ink cartridge or process/method claimed in the '279 Patent, and Defendants' conduct is, in every instance, without HPDC's consent.

111. Defendants, including APM, are actively inducing or contributing to the infringement by others of the '279 Patent.

112. As a result of the Defendants' past and continued unlawful infringement of the '279 Patent, HPDC has suffered and will continue to suffer damage. HPDC is entitled to recover damages adequate to compensate for that infringement in an amount that cannot be presently quantified, but will be ascertained at trial.

113. On information and belief, Defendants' acts of infringement have been made with full knowledge of HPDC's rights in the '279 Patent. Such acts constitute willful and deliberate infringement, entitling HPDC to enhanced damages and reasonable attorney fees.

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

114.   Defendants' acts of infringement have caused and will continue to cause irreparable injury to HPDC unless and until enjoined by this Court.

115.   HPDC seeks a preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the claims of the '279 Patent.

116.   HPDC seeks an accounting for damages, an award of interest and costs against Defendants, as well as a finding of willful infringement sufficient to warrant an award of attorneys' fees.

## COUNT VII

### Violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)
### (Against Mipo, MicroJet, Mipo America, SinoTime, and PTC)

117.   HP and HPDC reallege and incorporate herein by reference the allegations in paragraphs 1-116 above.

118.   HP has expended considerable time, effort, and money developing the patented printhead technology, which provides high quality printing to consumers around the world.  As a result of HP's activities and efforts, consumers who purchase HP ink cartridges have come to identify and expect high quality printing that is associated with HP's products and business.

119.   Defendants unlawfully obtained HP's goods, namely, HP printheads, incorporated the genuine HP printheads into its own knock-off ink cartridges, labeled the fully assembled products with its own identifying mark ("Mipo"), and marketed and sold those products to customers while representing that the products were their own.[4]  Such acts constitute the bodily appropriation of HP's property.

---

[4] While the HP printheads contain an "HP" mark, that mark is not visible to the naked eye. However, by mounting the HP printheads onto Defendants' ink cartridge bodies and incorporating the printhead into the final product, Defendants effectively removed HP's name from the printhead.

24

120. Defendants have misappropriated and profited from HP's talents and workmanship. As a result, HP has been deprived of the advertising value and goodwill of the HP brand name that would normally result from public knowledge of the true source of the products. As such, HP suffered and continues to suffer harm as a result of Defendants' unlawful actions.

121. Defendants' use of HP's genuine printheads as part of their infringing ink cartridges that have entered the stream of interstate commerce falsely designates and misrepresents the origin of Defendants' product and creates a likelihood of confusion to the general public.

122. As a result of Defendants behavior, Defendants have reverse passed off (or reversed palmed off) HP's printheads as its own, thereby misleading the public and deceiving the public as to the true source of their products.

123. Defendants committed the conduct described above willfully and said conduct is in violation of 15 U.S.C. § 1125(a).

124. Defendants' willful violation of 15 U.S.C. § 1125(a) entitles HP to an award of its damages, Defendants' ill-gotten profits, treble damages, costs and reasonable attorneys' fees.

125. In addition, HP seeks a return of the genuine HP printheads that were unlawfully taken by Defendants.

**COUNT VIII**

**Unfair Competition in Violation of**
**California Business and Professions Code § 17200 *et seq.***
**(Against Mipo, MicroJet, Mipo America, SinoTime, and PTC)**

126. HP and HPDC reallege and incorporate herein by reference the allegations in paragraphs 1-125 above.

127. Defendants' unauthorized use and subsequent sale of the converted HP printheads was unlawful and unfair to HP.

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

128.    Defendants' unauthorized use and subsequent sale of the converted HP printheads constitutes unfair, deceptive, untrue, and/or misleading advertising, in violation of Section 17500 of the California Business and Professions Code.

129.    Defendants' unauthorized use and subsequent sale of the converted HP printheads constitutes unfair competition in violation of Section 17200 *et seq.* of the California Business and Professions Code.

130.    By reason of the foregoing, Defendants have been improperly and unjustly enriched at the expense of the public and HP in an amount as yet unascertained, but in an amount to be proven at the time of trial, so that Defendants can make appropriate restitution.

131.    HP, and the public, are being irreparably harmed by Defendants' unfair practices and unfair competition.  There is no adequate remedy at law, thereby justifying preliminary and permanent injunctive relief under Section 17203 of the California Business and Professions Code.

## COUNT IX

### Conversion
### (Against Mipo, MicroJet, Mipo America, SinoTime, and PTC)

132.    HP and HPDC reallege and incorporate herein by reference the allegations in paragraphs 1-131 above.

133.    HP owns property rights in the genuine HP printheads that were unlawfully taken by Defendants and/or other unidentified parties.

134.    By virtue of the conduct as alleged herein, Defendants wrongfully converted such property to their own use in order to manufacture, market, and sell aftermarket clones in the marketplace.

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

135.   As a proximate result of Defendants' conversion of HP's property, HP has been damaged in an amount to be proven at trial, but not less than the jurisdictional minimum of this Court.

136.   Defendants' conduct in converting HP's property was malicious, oppressive, was done in conscious disregard of HP's rights, and was intended to harm HP.  HP is therefore entitled to an award of exemplary and punitive damages.

137.   Unless restrained by order of this Court, Defendants will continue to utilize and/or benefit from converted HP property, to HP's great and irreparable injury, for which damages will not afford adequate relief in that such damages will not compensate HP for injuries.  Therefore, HP seeks preliminary and permanent injunctive relief.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs HP and HPDC demand a jury trial on all issues triable by jury.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs HP and HPDC pray that this Court:

1) Enter judgment declaring that each of the HPDC Patents was duly and legally issued, is valid, and is enforceable;

2) Enter judgment declaring that Defendants have directly infringed one or more claims of each of the '598, '053, '347, '917, '817 and '279 Patents;

3) Enter judgment declaring that Defendants are actively inducing or contributing to the infringement of one or more claims of each of the HPDC Patents;

4) Enter judgment that Defendants have willfully infringed one or more claims of each of the HPDC Patents;

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

5) Award general damages according to proof, but in excess of the jurisdictional minimum of this Court, including, but not limited to, the damages resulting from the Defendants' infringement adequate to compensate for that infringement, including pre- and post-judgment interest as allowed by law, costs, and all other damages permitted by 35 U.S.C. § 284 and treble damages as a result of the Defendants' willful infringement;

6) Award HPDC its costs in this action, declare that this case is an exceptional one under 35 U.S.C. § 285, and award HPDC its reasonable attorneys' fees;

7) Putative, statutory, and exemplary damages according to proof;

8) Permanently enjoin the Defendants and their officers, agents, servants, employees, affiliates, representatives, successors and assigns, attorneys, and any others acting in concert with them, from infringing the '598, '053, '347, '917, '817 and '279 Patents and from marketing, selling, licensing, distributing or otherwise using, directly or indirectly, genuine HP printheads;

9) Award HP all appropriate damages, costs and reasonable attorneys' fees for Defendants' willful violation of 15 U.S.C. § 1125(a);

10) Award HP all appropriate damages and other available relief for Defendants' improper and unjust enrichment through their unfair practices and competition under the California Business and Professions Code;

11) Award HP all appropriate damages flowing as a consequence of Defendants' wrongful conversion of HP's property; and

12) Award HP and/or HPDC such further, necessary and proper relief as this Court may deem just and reasonable.

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 et seq.; and (9) CONVERSION

Dated:  May 20, 2010

Respectfully submitted,

FISH & RICHARDSON P.C.


By:  _Keeley Vega_____
     Keeley I. Vega (CA SBN 259928)


Attorneys for Plaintiffs HEWLETT-PACKARD
COMPANY and HEWLETT-PACKARD
DEVELOPMENT COMPANY, L.P.

29

COMPLAINT FOR: (1-6) PATENT INFRINGEMENT IN VIOLATION OF 35 U.S.C. § 271 et seq.; (7) VIOLATION OF SECTION 43(a) OF
THE LANHAM ACT, 15 U.S.C. § 1125(a); (8) UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS
CODE § 17200 et seq.; and (9) CONVERSION